

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

JDG: PT                                         *271 Cadman Plaza East*
F. #2012R00310                                  *Brooklyn, New York 11201*


October 17, 2014

By Hand and ECF

The Honorable John Gleeson
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      Re:    United States v. Shaka Stayman
              Criminal Docket Nos. 12-668(JG) and 13-264(JG)

Dear Judge Gleeson:

      On May 10, 2013, the defendant pleaded guilty to (a) Count One of the indictment (the "Indictment") filed under docket number 12 CR 668 (JG) and (b) a single-count information (the "Information") transferred to this district from the United States District Court for the Western District of North Carolina pursuant to Rule 20 of the Federal Rules of Criminal Procedure and filed under docket number 13 CR 264 (JG). The defendant has been in custody since June of 2012. The government respectfully submits this letter in connection with the defendant's sentencing, which is scheduled for October 23, 2014, and in response to the defendant's letter of October 14, 2014 (the "Def. Letter").

    I.    Offense Conduct

        A.    The Crimes of Conviction

      As set forth in the Pre-Sentence Investigation Report ("PSR"), the defendant engaged in two fraud schemes involving the use of stolen personal identifying information ("PII") to enrich himself and others. In particular, the scheme charged in Count One of the Indictment involved the defendant obtaining PII of deceased individuals for whose estates the Kings County Public Administrator's Office ("KCPA") was serving as executor. PSR ¶ 23. The defendant used the PII of these deceased individuals in order to impersonate them and withdraw funds from their financial accounts for the benefit of his co-conspirators and himself. Id. The defendant impersonated at least seven deceased individuals and successfully stole at least $475,000 that belonged to these deceased individuals' estates. Id. ¶ 45.

2

As also set forth in the PSR, the scheme charged in the Information involved the defendant obtaining PII of individuals who held retirement accounts at the financial institution TIAA-CREF. PSR ¶ 12. The defendant used this PII to impersonate the TIAA-CREF account-holders and withdraw funds from their financial accounts for the benefit of his co-conspirators and himself. Id. ¶¶ 13-16. The defendant impersonated at least twenty-one such TIAA-CREF account-holders, successfully stealing over $200,000 in this manner and unsuccessfully attempting to steal an additional $1 million. Id. ¶ 17, 41.

   B. Relevant Conduct

A preponderance of the evidence establishes that the defendant engaged in similar conduct with regard to other individual victims and financial institutions, illicitly obtaining the PII of unsuspecting victims and then impersonating those victims in order to withdraw, or attempt to withdraw, funds from those victims' accounts. Together with the loss and attempted loss for which the defendant is responsible that are associated with the crimes of conviction, the loss and attempted loss associated with the defendant's relevant conduct totals more than $3.5 million. PSR ¶ 39.

Of particular note, on at least four occasions following his April 17, 2012 arrest and release on bond, the defendant engaged in such criminal conduct. See PSR at ¶ 39 (victims Albert Algar on May 8, 2012, Jonny Dail on May 11, 2012, and Earl Porter[1] and Joseph Hatcher on May 21, 2012). Two of these attempts (Hatcher and Porter) were successful, resulting in a loss of $120,000 to those victims' financial institutions that occurred while the defendant was under the supervision of this Court. Id.

II.   Sentencing Guidelines Calculation

The government and the Probation Department agree, and the defendant does not dispute, that for Sentencing Guidelines purposes, the defendant is responsible for $2.5 million in loss or attempted loss; more than fifty victims;[2] and a two-point enhancement for

---

[1]   The fraud involving Porter is charged in Count Two of the Indictment.

[2]   The defendant argues that the rationale of Application Note 4(e) to U.S.S.G. § 2B1.1, which holds that individuals whose means of identification was used unlawfully or without authority are counted as victims for these purposes, is misplaced with regard to him. Def. Letter at 10-12. The defendant argues that because TIAA-CREF and other financial institutions reimbursed those victims, those victims did not lose money or "spend significant time resolving credit problems." Id. However, such victims did suffer the stress of wondering whether other of their financial accounts might have been compromised, or if their identity had been or would be misused in some other way. See, e.g., PSR ¶¶ 42, 44. The government also notes that it is unclear whether all of the other individual victims of the defendant's conduct, charged and uncharged, who had accounts at financial institutions other than at TIAA-CREF, were fully reimbursed by those institutions.

3

sophisticated means.  See PSR ¶¶62-64; Def. Letter at 6 n.2.  The government did not include a role enhancement in the Guidelines estimate in the defendant's plea agreement, and consistent with that agreement, the government does not advocate such a role enhancement here.  Thus, the government submits that the appropriate total offense level is 28.  The government further agrees with the defendant that the calculation of the defendant's Criminal History Category as I in his plea agreement was erroneous;[3] as the Probation Department found, the defendant is in fact in Criminal History Category II.  PSR ¶¶ 79-83.  Thus, the government submits that the defendant's advisory Guidelines range, based on a total offense level of 28 (with no role enhancement) and a Criminal History Category of II, should be 87-108 months.

   III.   Restitution

The defendant objects to being ordered to pay (a) $540,382 in restitution to TIAA-CREF, as the Probation Department would require, to compensate TIAA-CREF for engaging a public accounting firm to assist its internal investigations team in reviewing daily incoming withdrawal requests and (b) $5,500 TIAA-CREF paid for monitoring particular customers' accounts.  See PSR ¶ 41; Def. Letter at 18.  The government agrees with the Probation Department's position regarding the accounting firm expenses, and also submits, contrary to the defendant's argument, that the defendant should be required to pay restitution for $36,398 in legal expenses TIAA-CREF expended in hiring a law firm to file a civil lawsuit and obtain subpoenas for information in connection with its investigation of the defendant's scheme.  PSR ¶ 41; see Def. Letter at 18.

The government agrees with the defendant that victim expenses that are "incurred during the participation in the investigation or prosecution of the offense…" are compensable offenses pursuant to 18 U.S.C. § 3663A(b)(4).  In United States v. Amato, 540 F.3d 153, 158-163 (2d Cir. 2008) and United States v. Bahel, 662 F.3d 610, 647-48 (2d Cir. 2011), the Second Circuit found that the attorney's fees and accounting costs at issue were subject to restitution pursuant to 18 U.S.C. 3663A(b)(4).  And in United States v Maynard, 743 F.3d 374, 381 (2d Cir. 2014) and United States v. Cuti, --- F.3d ---, 2014 WL 4452976, at *8 (2d Cir. Sep. 11, 2014), the Second Circuit has explicitly stated that fees paid for "internal investigations undertaken in the face of evidence . . . . of internal misconduct which ultimately unmask fraud" are subject to restitution.  Cuti at *8, citing Maynard at 381.

The defendant argues that there is insufficient evidence that the contested expenses were necessary to the prosecution or investigation of the defendant.  Def. Letter at 22.  But these expenses were clearly aimed at unmasking the fraud that the defendant committed, together with coconspirators, and which is the subject of the crime charged in the Information and to which the defendant pleaded guilty.  Thus, it appears that the restitution sought by TIAA-CREF for (a) fees paid to an accounting firm to review withdrawal requests

---

[3]   The government takes no position on the defendant's argument that this Criminal History Category overstates the defendant's criminal history.  See Def. Letter at 13-14.

4

on TIAA-CREF accounts, and (b) fees paid to a law firm engaged to file a civil lawsuit in order to obtain subpoenas for information, are subject to mandatory restitution.

## IV. The § 3553(a) Factors

### A. Nature and Circumstances of the Offenses

The defendant engaged in a lengthy course of criminal conduct that involved stealing large sums of money by means of deception. To further his schemes, the defendant participated in stealing the identities of numerous innocent people, and then raided their pensions, retirement accounts, or otherwise hard-earned savings. Some of his victims could not even take steps to guard their identities and assets, because they were deceased. While many of the individual victims were made whole by their financial institutions, these victims still suffered the stress of knowing that their identities had been stolen, with possible future ramifications and the need to spend time and money monitoring their credit and other aspects of their lives to be sure they were not similarly victimized again. Further, at least some of the individual victims, including the estates of deceased victims whose estates were administered by the Kings County Public Administrator's Office, have not to date been made whole. Further, the losses to the financial institutions themselves redounded to the innocent owners of and shareholders in those financial institutions – the defendant's crime was far from victimless.

While the defendant may have used some of the proceeds of his crimes to support his family, he also used them to support a lavish lifestyle, complete with a Porsche for himself, a BMW for his then-wife, an apartment in a luxury building in an exclusive Atlanta neighborhood and expensive clothes and accessories. Clearly, the defendant's motivation in committing his crimes was not merely survival but also greed.

### B. Promotion of Respect For the Law

The defendant's criminal conduct while on pre-trial release requires a severe penalty in order to promote respect for the law. See 18 U.S.C. § 3553(a)(1)(A). The defendant was arrested in April 2012 for a wire fraud scheme involving identity theft, like the crimes of conviction. When released on bond by this Court on consent of the government, he was of course admonished by the Court not to commit any further crimes, and that doing so would violate the terms of his release. Yet within a month of his release, the defendant began committing the very same type of crime, successfully stealing an additional $120,000. Such egregious disrespect for the Court and the law strikes at the system of pre-trial release itself, which is both based in large part on the Court's trust in released defendants, and makes the Court, in a sense, responsible for a defendant's post-release crimes.

5

C.  History and Characteristics of the Defendant

Before embarking on the crimes of conviction and relevant conduct, the defendant had previously been arrested for a similar, albeit less sophisticated offense, and received a probationary sentence.  Clearly, that "wake-up call" did not have the needed effect on the defendant's behavior, but instead prompted him to engage in more sophisticated schemes, enabling him to elude detection and prosecution for years.  The government does not dispute the defendant's positive attributes as a parent or family member.  See Def. Letter at 3-4.  Whatever the defendant's positive qualities as a parent and family member, he chose to make a living for years almost entirely by criminal means.

D.  Specific Deterrence

The defendant became accustomed to a lifestyle supported by his crimes, even after his probationary sentence following his first conviction.  A significant sentence is necessary to deter him from returning to the same life he led before his arrest.

E.  General Deterrence

Fraud schemes involving identity theft are rampant today, causing astronomical losses to victimized individuals and businesses, destroying individual victims' peace of mind, and increasing otherwise unnecessary security costs.  Such commonly conducted schemes as the defendant's must be punished severely in order to deter others from perpetrating such schemes.

V.  Conclusion

For all of the aforementioned reasons, and in light of all the facts of circumstances of the defendant's case, the government respectfully requests that the Court (a) sentence the defendant to a term of imprisonment within the range of 78-97 months, as contemplated in the government's plea agreement with the defendant; and (b) order the defendant to pay restitution as set forth in the PSR, as well as an additional $36,398 to

6

TIAA-CREF for its costs in engaging counsel to file a civil lawsuit and obtain subpoenas for information in connection with its investigation of the defendant's criminal conduct.

                                              Respectfully submitted,

                                              LORETTA E. LYNCH
                                              United States Attorney

By:    /s/
                                              Paul Tuchmann
                                              Assistant U.S. Attorney
                                              718-254-6294

CC:    Donna Newman, Esq. (By Electronic Mail)